IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SUZANNE BOLGER,<br><br>      *Plaintiff*<br><br>v.<br><br>MARY UTERMOHLEN, et al.,<br><br>      *Defendants* | Case No. 2:20-cv-03100-JDW |

### MEMORANDUM

"Only the written word is the law[.]" *Bostock v. Clayton Cty., Georgia*, 140 S. Ct. 1731, 1737 (2020). "The people are entitled to rely on the law as written, without fearing that courts might disregard its plain terms based on some extratextual consideration." *Id.* at 1749. Courts many not "favor contemporaneous or later practices *instead* of the laws Congress passed." *McGirt v. Okla.*, 140 S. Ct. 2452, 2568 (2020). Despite this, for more than 70 years, courts have ignored the written words in 28 U.S.C. § 1446(b)(3) in favor of a judge-made rule, the "voluntary-involuntary" rule. In doing so, they have relied on legislative history and policy-based rationales. But, as the Supreme Court recently reiterated, those kinds of extratextual considerations have no bearing on a statute that is clear and unambiguous, like Section 1446(b)(3). The Court will not ignore the statutory language in the name of efficiency or tradition. It concludes that it has subject matter jurisdiction to hear this case.

I.       FACTUAL AND PROCEDURAL HISTORY

    A.       History Of This Action

On April 16, 2018, Mary Utermohlen rear-ended Suzanne Bolger's car. Ms. Bolger claims to have sustained injuries as a result. On February 27, 2020, Ms. Bolger filed a lawsuit against Ms. Utermohlen, Frederick Utermohlen (the vehicle's owner), and State Farm Automobile Insurance Company in the Philadelphia County Court of Common Pleas. Ms. Bolger asserted negligence claims against the Utermohlens and sought underinsured motorist coverage from State Farm. On May 28, 2020, the Common Pleas Court sustained Preliminary Objections in part. The court severed Ms. Bolger's UIM claim against State Farm and transferred her remaining claims to the Bucks County Court of Common Pleas. The UIM claim against State Farm remained in Philadelphia County.

On June 25, 2020, State Farm filed a Notice of Removal pursuant to 28 U.S.C. § 1446(b)(3). On July 1, 2020, the Court issued an Order To Show Cause to State Farm as to why the Court should not remand the matter to state court, in light of the voluntary-involuntary rule. State Farm filed a memorandum in response to the Court's order (ECF No. 4), and the Court heard oral argument on August 14, 2020.

    B.       History Of The Voluntary-Involuntary Rule

Under the voluntary-involuntary rule, "a case that is not initially removable cannot become removable except by a voluntary act of the plaintiff, such as amendment of the pleadings or voluntary dismissal of the non-diverse defendant." *Newman v. Ethicon, Inc.*, No. 19-cv-4496, 2019 WL 6251194, at *2 (E.D. Pa. Nov. 21, 2019) (quotation omitted). Thus, if a state court terminates the action as to a non-diverse party, then the case is not removable. *See id.* If, however, the plaintiff terminates the action as to the non-diverse party on its own, then the matter becomes removable.

The involuntary-voluntary rule originated in *Powers v. Chesapeake & O. Ry. Co.*, 169 U.S. 92 (1898). There, the plaintiff had sued multiple parties in state court, including non-diverse defendants. The plaintiff later dismissed the suit against the non-diverse parties and argued that the defendant, who was diverse, could not remove the case to federal court because the time period for removal had expired. The Supreme Court disagreed and concluded that the plaintiff's dismissal of the non-diverse defendants triggered the removal period. *See id.* at 101. Two years later, in *Whitcomb v. Smithson*, 175 U.S. 635, 636 (1900), the Supreme Court focused on the voluntary act of the plaintiff to distinguish *Powers* from the case before it. In *Whitcomb*, unlike *Powers*, the state court directed a verdict in favor of the non-diverse defendant. The Court found that because the non-diverse party was dismissed without the plaintiff's consent, the case did not become removable, even though there was diversity of citizenship after the directed verdict. *Whitcomb*, 175 U.S. at 637. Following these decisions, the involuntary-voluntary rule took hold, and federal courts remanded cases back to state court where an involuntary act of the state court, rather than a voluntary act of the plaintiff, rendered the case removable.

In 1949, Congress amended the removal statute:

> [I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

28 U.S.C. § 1446(b)(3). According to the limited legislative history that is available:

> [T]he amendment to subsection (b) is intended to make clear that the right of removal may be exercised at a late state of the case if the initial pleading does not state a removable case but its removability is subsequently disclosed. This is declaratory of the existing rule laid down by the decisions. (See for example, *Powers v. Chesapeake etc., Ry. Co.*, 169 U.S. 92.)

3

House Report No. 81-352, 1949 U.S.C.C.A.N. 1254, 1268 (March 30, 1949). After 1949, most federal courts, including district courts in this circuit, continued to apply the voluntary-involuntary rule. *See, e.g., Poulos v. Naas Foods, Inc.,*, 959 F.2d 69, 72 (7th Cir. 1990); *Self v. General Motors Corp.*, 588 F.2d 655, 658 n.4 (9th Cir. 1978); *Weems v. Louis Dreyfus Corp.*, 380 F.2d 545, 548 (5th Cir. 1967); *Matteo v. Progressive Advanced Ins. Co.*, Civ. A. No. 2:12-cv-5012, 2012 WL 13018245, at * 4 (E.D. Pa. Sept. 27, 2012); *In re Asbestos Prods. Liab. Litig. (No. VI)*, 801 F. Supp.2d 337, 340 (E.D. Pa. 2011); *Rubino v. Genuardi's Inc.*, No. 10-cv-6078, 2011 WL 344081, at *5 (E.D. Pa. Jan. 31, 2011); *Greco v. Beccia*, No. 99-cv-2136, 2001 WL 121887, at *3 (M.D. Pa. Feb. 13, 2001); *Abels v. State Farm Fire and Cas. Co.*, 694 F. Supp. 140, 144-45 (W.D. Pa. 1988); *Jenkins v. Nat'l Union Fire Ins. Co. of Pa.*, 650 F. Supp. 609, 611 (N.D. Ga. 1986). A handful of district courts has bucked the trend, though subsequent appellate decisions seem to have overruled them. *See, e.g., Lyon v. Ill. Central R.R.*, 228 F. Supp. 810, 811 (S.D. Miss. 1964); *Parkhill Produce Co. v. Pecos Valley S. Ry.*, 196 F. Supp. 404, 406-07 (S.D. Tex. 1961); *Bradley v. Halliburton Oil Well Cementing Co.*, 100 F. Supp. 913, 916-17 (E.D. Okla. 1951).

The courts that continue to apply the voluntary-involuntary rule explain that the rule serves two purposes: (1) it contributes to judicial economy by "yo-yo" effect in which a case gets removed and then remanded because a state court appeal reinstates a non-diverse party and destroys diversity jurisdiction; and (2) it defers to the plaintiff's choice of forum and limits federal jurisdiction. *E.g., Poulos*, 959 F.2d at 72; *see also Asbestos Prods. Liab. Litig.*, 801 F. Supp.2d at 340; *Greco*, 2001 WL 121887, at * 3. In addition, courts have concluded that the legislative history demonstrates that Congress did not intend to alter

the voluntary-involuntary rule when it amended the statute in 1949. *See Weems*, 380 F.2d at 548.

## II.     LEGAL STANDARD

Defendants may remove a civil case from State court if the federal court would have subject matter jurisdiction over the matter. *See* 28 U.S.C. § 1446(a). This is true even if the case was not removable at the time it was filed. *See* 28 U.S.C. § 1446(b)(3). As the party asserting the federal court's jurisdiction, a defendant who removes a case from state court "bears the burden of proving that jurisdiction exists."  *Nuveen Mun. Tr. ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C.*, 692 F.3d 283, 293 (3d Cir. 2012) (citing *Hertz Corp. v. Friend*, 559 U.S. 77, 96 (2010)). The Court has "an independent obligation to determine whether subject-matter jurisdiction exist[s]." *Guerra v. Consol. Rail Corp.*, 936 F.3d 124, 131 (3d Cir. 2019) (quotation omitted).

## III.    ANALYSIS

Section 1446(b)(3) permits removal within 30 days after receiving an "<u>order</u> or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3) (emphasis added). "It is the cardinal canon of statutory interpretation that a court must begin with the statutory language." *In re Philadelphia Newspapers, LLC*, 599 F.3d 298, 304 (3d Cir. 2010), *as amended* (May 7, 2010). "When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" *Id.* (quoting *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 254 (1992)); *see also Idahoan Fresh v. Advantage Produce, Inc.*, 157 F.3d 197, 202 (3d Cir. 1998) ("Where the statutory language is plain an unambiguous, further inquiry is not required . . ..").

To determine whether statutory language is ambiguous, the Court must "read the statute in its ordinary and natural sense." *Id.* (quotation omitted). In doing so, the Court must take care to apply the ordinary meaning of the terms of the statute as they existed "at the time of its enactment." *Bostock*, 140 S. Ct. at 1738; *see also McGirt*, 140 S. Ct. at 2468 (in interpreting Congressional enactment, a court's task is to "ascertain and follow the original meaning of the law"). Courts "look to dictionary definitions to determine the ordinary meaning of a word." *Downey v. Pennsylvania Dep't of Corr.*, — F.3d —, 2020 WL 4432605, at *4 (3d Cir. Aug. 3, 2020) (quotation omitted). "A provision is ambiguous only where the disputed language is 'reasonably susceptible of different interpretations.'" *Philadelphia Newspapers*, 599 F.3d at 304 (same).

Section 1446(b)(3) permits removal "within 30 days after receipt by the defendant . . . of a copy of an . . . **order** or other paper from which it may first be ascertained that the case is one which is or has become removable. 28 U.S.C. § 1446(b)(3) (emphasis added). Because Congress inserted the word "order" into the statute in 1949, the Court must consider the ordinary meaning of the word "order" as it existed at that time. In 1949, an "order" was "[a] mandate, precept; a command or direction **authoritatively given**; a rule or regulation." Black's Law Dictionary 1298 (3rd ed. 1933) (emphasis added). In practice, an "order" was "[e]very **direction of a court or judge** made or entered in writing, and not included in a judgment[.]" *Id.* (emphasis added). By definition, then, an "order" is an act of a court.

Section 1446(b)(3) is only susceptible of one reading: an order by a state court that creates diversity jurisdiction gives a defendant the right to remove the case within 30 days. Ms. Bolger did not put forth an alternative reading of the statute at the hearing in this case. Nor has the Court found any court or commentator that has offered a different

6

reading. Quite the opposite. Courts have noted that the voluntary-involuntary rule is in "tension" with Section 1446(b)(3). *E.g., Matteo*, 2012 WL 13018245, at * 2 n.1; *Rubino*, 2011 WL 344081, at *5. And they have noted that by enforcing the rule, they are not giving the statute its "literal effect." *DeBry v. Transamerica Corp.*, 601 F.2d 480, 486 (10th Cir. 1979). Prominent commentators agree. Wright & Miller say, "<u>Read literally</u> the reference to 'order' in the statute could permit removal when a non-diverse party is eliminated by a court order related to the merits of the dispute, over plaintiff's objection ...." 14C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 3723 (4th ed. 2010) (emphasis added). Moore explains that "[o]n its face," Section 1446(b)(3) appears to conflict with the voluntary-involuntary rule. 16 *Moore's Federal Practice - Civil* § 107.140 (2020).

Courts should not adopt readings of a statute that are in tension with the words of the statute. Instead, it is a court's job to read a statute as written—to read it "literally," in the parlance of Wright & Miller—and give effect to its words. "After all, only the words on the page constitute the law adopted by Congress and approved by the President. If judges could add to, remodel, update, or detract from old statutory terms inspired only by extratextual sources and our own imaginations, we would risk amended statutes outside the legislative process reserved for the people's representatives." *Bostock*, 140 S. Ct. at 1738. When it comes to Section 1446(b)(3), that means giving force to Congress's mandate that an "order" can trigger the time for removal.

The decisions that reach a different conclusion and apply the voluntary-involuntary rule ignore this mandate. They focus on extra-textual factors such as legislative history and policy rationales like judicial efficiency. Those decisions violate the mandate that statutory interpretation stop when the statutory language is clear and unambiguous.

7

Indeed, most of the decisions applying the voluntary-involuntary rule do not even pause to analyze the statutory text before turning to other factors. That is a flawed approach to statutory interpretation because it elevates extra-textual factors above the text itself. Second, the decisions make policy judgments that belong to Congress, not the courts. There is merit to the concerns that courts have articulated about judicial inefficiency from removals while a state court order might be subject to appeal. However, it is Congress's job to weigh those concerns, and it did so in 1949. Courts should not second-guess the way that Congress wrote the statute, no matter how compelling the policy concerns.

Nor does the legislative history of the 1949 amendment to Section 1446 justify decisions that ignore the statutory language. A court should not resort to legislative history where a statute's language is clear. *See Hay Group, Inc. v. E.B.S. Acquisition Corp.*, 360 F.3d 404, 406 (3d Cir. 2004). And legislative history is "meant to clear up ambiguity, not create it." *Milner v. Dept. of Navy*, 562 U.S. 562, 574 (2011); *see also Bostock*, 140 S. Ct. at 1749.

When the Common Pleas Court severed Ms. Bolger's claims against Ms. Utermohlen from her claims against State Farm, it issued an order that created complete diversity in the case between Ms. Bolger and State Farm. The plain language of Section 1446(b)(3) then gave State Farm 30 days to remove the case. State Farm did so. State Farm complied with Section 1446(b)(3), and this Court therefore has subject matter jurisdiction.

## IV.   CONCLUSION

As longstanding as it may be, the voluntary-involuntary did not survive Congress' 1949 amendments to 28 U.S.C. § 1446(b). The judge-made rule must yield to the plain language of the statute. The statute permitted State Farm to remove this matter following

the state court's order severing the non-diverse defendant from the case, and the Court has satisfied its independent obligation to determine that it has subject-matter jurisdiction over the present matter.

BY THE COURT:

/s/ Joshua D. Wolson
JOSHUA D. WOLSON, J.

September 10, 2020